STARIN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KATHERINE CZARTOSZEWSKI | : | CASE NO.: 1:23-CV-880 |
| 8177 S. Cleveland Massilon Rd., Lot 40 | : | |
| Clinton, OH  44216 | : | JUDGE |
| | : | |
| and | : | |
| | : | |
| NATHAN MINGER | : | **COMPLAINT FOR INJUNCTIVE** |
| 3557 Laubert Road | : | **RELIEF AND DAMAGES** |
| Atwater, OH 44201 | : | |
| | : | **(Jury Demand Endorsed)** |
| and | : | |
| | : | |
| KELLY PAUL | : | |
| 733 West Market St., Apt. 504 | : | |
| Akron, OH 44303 | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| STARK COUNTY METROPOLITAN | : | |
| HOUSING AUTHORITY | : | |
| 400 Tuscarawas Street East | : | |
| Canton, OH 44702 | : | |
| | : | |
| and | : | |
| | : | |
| KATHRYN KEIM | : | |
| 9755 Emerald Brook Circle NW | : | |
| Canal Fulton, OH 44614 | : | |
| | : | |
| and | : | |
| | : | |
| PAMELA GOWEN | : | |
| 2344 54th Street NE | : | |
| Canton, OH 44705 | : | |
| | : | |
| JOHN DOES 1 THROUGH 10 | : | |
| | : | |
| Defendants. | : | |

For their Complaint against Defendants Stark County Metropolitan Housing Authority ("County"), and John Does 1 through 10 (collectively referred to as "Defendants"), Plaintiffs Katherine Czartoszewski, Nathan Minger and Kelly Paul, by and through counsel, state as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Plaintiff Katherine Czartoszewski is an individual residing in Clinton, Ohio and is a former employee of the Stark County Metropolitan Housing Authority.

2.      Plaintiff Nathan Minger is an individual residing in Atwater, Ohio and is a former employee of the Stark County Metropolitan Housing Authority.

3.      Plaintiff Kelly Paul is an individual residing in Akron, Ohio and is a former employee of the Stark County Metropolitan Housing Authority,

4.      Defendant Stark County Metropolitan Housing Authority is a political subdivision employer under the laws of the State of Ohio located in Canton, Ohio.

5.      Defendant Kathryn Keim is an individual residing in Canal Fulton, Ohio and is a former employee of the Stark County Metropolitan Housing Authority.

6.      Defendant Pamela Gowen is an individual residing in Canton, Ohio and is a former employee of the Stark County Metropolitan Housing Authority.

7.      John Does 1 through 10 are unknown individuals and employees of Stark County Metropolitan Housing Authority residing in the State of Ohio who participated in the wrongful conduct against Plaintiffs.

8.      Upon information and belief, all allegations contained in the Complaint occurred in Stark County, Ohio.

9.      Venue is proper in the United States District Court for the Northern District of Ohio, Eastern Division because it is the Court for the district, division and county in which all or a substantial part of the events giving rise to this Complaint occurred.

10.     Jurisdiction is proper in the United States District Court for the Northern District of Ohio, Eastern Division pursuant to 28 U.S.C. §1331 because this case presents Federal questions.

11.     The United States District Court also has supplemental jurisdiction over the remaining claims in this Complaint under 28 U.S.C. §1367.

## FACTUAL ALLEGATIONS

12.     Plaintiffs are all Caucasian individuals who worked for the Stark County Metropolitan Housing Authority ("SMHA").

13.     Mr. Minger was the first of Plaintiffs to be hired by SMHA in February 2019. Initially, Mr. Minger was hired as a maintenance employee and was such a consistently strong performer that he quickly worked his way up to become a Capital Funds Program Manager in October 2021, reporting directly to the Interim Executive Director, Jeff Patterson.  Mr. Minger was a great performer and never had any issues related to his performance until he was subjected to retaliation, harassment and discrimination by Defendants.  In fact, according to Mr. Patterson, Mr. Minger was one of SMHA's best employees because he often went above and beyond his job expectations for the benefit of the agency.

14.     Mrs. Czartoszewski was hired by SMHA in September 2021 as a Prevailing Wage Coordinator and she reported directly to Defendant Keim (Caucasian).  Keim

3

frequently acknowledged Mrs. Czartoszewski's great performance in this role and even promoted her after just six (6) months of employment.  Right before Defendants subjected Mrs. Czartoszewski to retaliation, harassment and discrimination, Keim was considering her for another promotion.

15.     Ms. Paul was hired as a Procurement and Contracting Specialist for SMHA in October 2021.  Ms. Paul also reported directly to Keim, who regularly acknowledged Ms. Paul's strong performance and work ethic. Ms. Paul never experienced any performance issues until she was subjected to retaliation, harassment and discrimination by Defendants.

16.     In May 2022, Plaintiffs attended a meeting with Defendant Keim and other SMHA employees, including Brett Valasek.  Every person in this meeting, including Plaintiffs, are Caucasian.

17.     During the meeting, Mr. Valasek mentioned that SMHA would be closed on Monday, June 20 in honor of Juneteenth, a newly recognized federal holiday celebrating the freedom of enslaved African Americans as of June 19, 1865.  Mr. Valasek also noted in a joking fashion that he would be "celebrating all week" because he would be on vacation during the week of Juneteenth.

18.     Plaintiffs did not pay much attention to Mr. Valasek's comment at the time it was made and no one in the meeting responded negatively to it or told him they felt it was inappropriate or offensive, including Keim.  From Plaintiffs' perspective, Mr. Valasek did not make his comments with any ill will or bad intent.  Instead, he was just

acknowledging that he would be on vacation all week, while everyone else was off for only one day.

19.     After the meeting ended, Keim immediately made separate calls to Mrs. Czartoszewski and Ms. Paul – her subordinates – and expressed apparent outrage at the comment Mr. Valasek made about his vacation.  Specifically, Keim accused Mr. Valasek of being racially insensitive and discriminatory.  Keim asked Mrs. Czartoszewski and Ms. Paul what they thought of Mr. Valasek's comment but made it abundantly clear that she expected them to agree with her no matter how they perceived the situation.

20.     Mrs. Czartoszewski and Ms. Paul knew it was important to be honest with Keim because of the seriousness of her accusations, and they both told her that they did not personally perceive Mr. Valasek's comment as racist or discriminatory but based on Keim's response, they understood how someone could perceive it as such.

21.     Keim was not pleased with Mrs. Czartoszewski and Ms. Paul's opinions and pressed them to see the situation exactly her way.  Despite Keim's insistence that Mrs. Czartoszewski and Ms. Paul change their perception of Mr. Valasek's comments, they were honest and maintained their positions in good faith to Keim's annoyance. Therefore, Mrs. Czartoszewski and Ms. Paul participated in good faith with Ms. Keim's investigation into conduct alleged to be discriminatory.

22.     Mrs. Czartoszewski and Ms. Paul continued to perform their jobs normally for the next few weeks after their conversations with Keim and assumed the issues she perceived with Mr. Valasek's comments were resolved because they heard nothing more about it.

23.     Mr. Minger also continued to perform his job as usual after the meeting and no one, including Keim or any other supervisor, spoke with him about any perceived issues with Mr. Valasek's comment after the meeting concluded, even though Mr. Minger was Mr. Valasek's direct supervisor.  Nonetheless, Mr. Minger heard rumblings that Keim was accusing Mr. Valasek of being racist and that she even filed a formal complaint against him.

24.     Pursuant to SMHA policy and practice, Keim could and should have reported her concerns to Mr. Minger about Mr. Valasek's conduct, but, upon information and belief, Keim bypassed this established procedure because she wanted to punish Mr. Valasek and she knew Mr. Minger would not agree with her claim that his comment was racist.

25.     Upon further information and belief, Keim also forced Plaintiffs to be involved in the investigation into Mr. Valasek because they did not agree with her perception of his comment about his vacation.

26.     Around May 25, 2022, Plaintiffs became the subjects of another investigation into the incident in question.

27.     Indeed, on or around this date, David Simpson – one of SMHA's security officers – forced Plaintiffs to be escorted to SMHA's security office without any warning or explanation for impending interrogation.

28.     When Mr. Simpson came to Ms. Paul, he demanded she execute a written statement outlining her recollection of the comments Mr. Valasek made weeks ago.  Mr. Simpson also told Ms. Paul that he would be taking her to the security office to question

her as a witness. Ms. Paul was surprised because she had heard nothing about this meeting for weeks and assumed that they had been resolved. Nevertheless, Ms. Paul drafted her statement to the best of her recollection and followed Mr. Simpson to the security office as she was instructed.

29. As Mr. Simpson escorted Plaintiffs to the security office, he treated them like they were criminals and the target of the investigation, which caused immediate and understandable concern for their job security. It was well known among SMHA staff and Plaintiffs that SMHA's Director of Security, Pam Gowen (Caucasian), made it a practice to regularly and seriously violate the rights of other SMHA employees through intentional and malicious hostility, harassment, discrimination and retaliation with no repercussions, and she was directly involved in the investigation of Mr. Valasek.

30. Mr. Simpson refused to tell Mrs. Czartoszewski and Mr. Minger why they were being brought to the security office despite their clear anxiety.

31. At the beginning of Mrs. Czartoszewski and Mr. Minger's "interviews," Gowen informed them that they were "witnesses" to an "investigation" about a comment made by Mr. Valasek that Keim believed to be racially insensitive. Therefore, there can be no dispute that Plaintiffs' involvement in the investigation was protected conduct. Like Ms. Paul, Mrs. Czartoszewski and Mr. Minger were surprised to be called as "witnesses" because they figured the issue had been resolved in the weeks that had passed.

32. By the way they were treated, Plaintiffs knew Gowen had one goal in mind – to obtain statements against Mr. Valasek to support Keim's complaint that his comment

was racially insensitive and violated SMHA policy.  Indeed, Gowen was immediately hostile, excessively intimidating and acted with malice against a group of individuals who were only involved in the investigation because they were witnesses to the comment.

33.     Going into the investigations, Plaintiffs understood that they were obligated to be truthful and should not fear retaliation because they were engaged in protected activity by serving as witnesses in a race-based workplace investigation. Unfortunately, Defendants chose not to follow SMHA's policy or the law and retaliated against Plaintiffs.

34.     Despite the fact that this "investigation" was about Mr. Valasek's conduct alone, it soon became clear to Plaintiffs that Defendants were also targeting them for merely participating in the investigation and providing their honest opinion of the matter to prevent any unlawful conduct.

35.     In separate meetings, Gowen – cloaked with the authority of SMHA – demanded that Ms. Paul, Mrs. Czartoszewski and Mr. Minger execute written statements outlining their personal perception of the meeting at issue and Mr. Valasek's conduct during it.

36.     Plaintiffs complied with Gowen's demands and provided written and signed statements based on their best recollections of a nondescript event that took place weeks ago.  At this point, Plaintiffs were fearful of retaliation due to Gowen's aggressive and hostile treatment of them, but they remained honest and restated their position that they were not offended by Mr. Valasek's comments.

37.     This made Gowen even more hostile to Plaintiffs in response to their truthful perspective of the matter.  She also made them feel like they committed a crime and were being interrogated.  In fact, Gowen even made it a point to brag to Plaintiffs about her experience interrogating criminals and used this to threaten and intimidate them during their questioning.

38.     During these interrogations, each of the Plaintiffs became visibly upset but this did not deter Gowen's inappropriate and unlawful conduct.  Instead, she continued to aggressively question Plaintiffs about their statements and she did everything in her power to intimidate them into changing them to agree that Mr. Valasek's comments were racist.  Gowen acted outrageously and inappropriately by treating Plaintiffs as if they were the ones under investigation, which turned out to be precisely the case.

39.     Plaintiffs fully complied with their responsibilities to cooperate and provide truthful information during the protected investigation, but nothing was enough to satisfy Gowen unless they bent to her will.

40.     Gowen subjected Plaintiffs to serious discrimination and retaliation because, upon information and belief, she would not have subjected them to such wrong conduct if they were African American employees with the same perception of Mr. Valasek's comment.

41.     For instance, during Ms. Paul's interrogation, Gowen accused her of "lying" about her perception or somehow "covering up" for Mr. Valasek, even though she had absolutely no reason to do so.  Gowen also demanded that Ms. Paul return to her office,

think about her answers, and return to security with a new statement consistent with Defendants' narrative.

42.     Gowen also demanded that Plaintiffs keep the **<u>substance</u>** of their interviews confidential and Plaintiffs agreed to do so under duress, even though such agreements are illegal.

43.     Upon information and belief, Keim reported Mrs. Czartoszewski and Ms. Paul to management and/or human resources in retaliation for not agreeing with her view of how she perceived Mr. Valasek's conduct.  Upon information and belief, Keim's report is the direct action that prompted the harassing and intimidating interrogations masquerading as lawful investigations.

44.     Ultimately, each of the Plaintiffs learned that they had all been separately interviewed by security about Mr. Valasek's comment and were all subjected to the same type of excessive, inappropriate, and intimidating tactics from Gowen.  When Plaintiffs discussed their shared experience, they complied with their unlawful and coerced confidentiality agreements and never revealed the substance of their interviews.  Rather, Plaintiffs talked about how they felt like targets of an investigation who were being discriminated and retaliated against for simply providing truthful statements about their personal perception of an event that happened weeks prior.

45.     Following the guidance of the SMHA handbook, Plaintiffs independently, separately and privately reported the wrongful, retaliatory and discriminatory treatment they experienced at the hands of Gowen to the Director of Human Resources, Regina Mills, and Mr. Patterson.

46.     Plaintiffs' participation in the race-based workplace investigation and their formal complaints of discrimination and retaliation were protected conduct that should never have resulted in civil rights violations of any kind.  Instead, Defendants continued to retaliate against Plaintiffs in violation of state and federal  law.

47.     In early June 2022, Keim filed a complaint against Mr. Minger in retaliation for his participation into the investigation of Mr. Valasek by now claiming that Mr. Minger was engaging in racially insensitive conduct by making a comment in her presence she deemed offensive.

48.     Somehow, Keim had come to believe that she was deputized to determine what comments were offensive without regard to context or historical understanding.  Indeed, Keim claimed it was racially offensive for Mr. Minger to refer to a tenant as a "hood rat" without any understanding that the term is not tied to any particular race of people.  Instead, frontline SMHA employees have used this term to describe **any** tenant, without regard to race, who failed to take care of their property.  Specifically, Mr. Minger was complaining that elderly and other vulnerable tenants were treated worse than some of the "hood rat" tenants.  Mr. Minger's comment had nothing to do with race or ethnicity and he made this abundantly clear to Keim.  As a result, Mr. Minger had no idea why Keim was offended by his benign comment, but she nevertheless accused him of acting in violation of SMHA anti-discrimination policy.

49.     Soon after, Mr. Minger was hauled back to the security office for questioning by Gowen – the same exact person he just filed an internal complaint against for her abusive, discriminatory and retaliatory treatment.  Despite this complaint, SMHA

allowed Pam to use this opportunity to continue subjecting Mr. Minger to unlawful retaliation and discrimination that was now fueled by her own personal rage and revenge.

50.     To be sure, Gowen spent the vast majority of this second interrogation focused intently on questioning Mr. Minger about the complaint he submitted against her.  Indeed, Gowen became very hostile and angry with him when he rightly rejected her repeated attempts to discuss the complaint while being the subject of the complaint. Mr. Minger knew it was totally and completely inappropriate for him to be subjected to an interrogation about his complaint by the very person he lodged it against, and he eventually became frustrated with Gowen's retaliatory tactics.  Mr. Minger could not believe that simply being a witness in a protected investigation had turned him into a target for such blatant retaliation and discrimination himself.

51.     After Mr. Minger participated in these interviews, Gowen and Ms. Mills, SMHA's Director of Human Resources, went to SMHA's Board of Directors to continue their campaign of retaliation against him.  Indeed, Gowen and Ms. Mills argued to the Board that SMHA should no longer employ Mr. Minger because of a felony conviction from thirty (30) years ago in 1993, which Defendants had full knowledge of at the time of his hiring.  Gowen and Mills revealed Mr. Minger's private and irrelevant past to the entire Board to smear his reputation and find additional support for their pretextual plan to terminate him.

52.     Defendants also escalated their campaign of retaliation against Ms. Paul and ordered her to return to security for another interrogation the very day after she

submitted her complaint against Gowen to HR and the Interim Executive Director.  Ms. Mills was present along with Gowen for this second interrogation.

53.     Ms. Paul was hopeful that Ms. Mills was present to moderate a discussion about Ms. Paul's internal complaint against Gowen for seriously unlawful conduct that had just been reported the day before. Instead, Ms. Mills mentioned nothing about the complaint Ms. Paul made against Gowen and allowed Gowen to threaten Ms. Paul with immediate termination for allegedly violating SMHA policy by speaking with Ms. Czartoszewski and Mr. Minger about the hostility, discrimination, retaliation they faced at the hands of Gowen, even though they had always kept the substance of their interrogations confidential.  Ms. Paul told Ms. Mills and Gowen that she and Plaintiffs had fully complied with the confidentiality obligations related to their previous interviews and only discussed the interrogation "tactics" and not the substance, but Gowen refused to believe this truthful statement.

54.     It was obvious to Ms. Paul during this interrogation that Ms. Mills had already shared Ms. Paul's complaint with Gowen and that Defendants were determined to continue retaliating against her for asserting her rights.

55.     On June 16, 2022, Plaintiffs were all fired without receiving a response from management about the complaints they had made against Gowen weeks ago or any other sort of investigation into her conduct.

56.     These simultaneous terminations make it clear that Plaintiffs were unlawfully terminated for engaging in protected conduct.  In fact, the termination letters

themselves explicitly confirm that SMHA terminated Plaintiffs due to their involvement in a protected workplace investigation of Mr. Valasek.

57.    Moreover, unlike Plaintiffs, Mr. Valasek was not terminated.  Indeed, Defendants retained Mr. Valasek in light of his allegedly racist conduct because he was pressured into admitting that his comments were inappropriate when he was interviewed.  Soon after, Mr. Valasek was overcome with grief due to the unlawful termination of Plaintiffs and he made the decision to resign from his employment with SMHA.

58.    The facts are clear – Plaintiffs were unlawfully terminated for providing their honest perception of Mr. Valasek's comment and refusing to be pressured into changing their statements to fit the narrative of Defendants.

59.    Plaintiffs all applied for unemployment benefits shortly after they were unjustly terminated.

60.    Plaintiffs also filed charges with the Equal Employment Opportunity Commission and the Ohio Civil Rights Commission for a hostile work environment, discrimination and retaliation in violation of Title VII and other state and federal laws and received their right to sue letters on March 9, 2023.  (See Plaintiffs' Dual Charges and Right to Sue Letters, attached as Exhibits A, B and C to this Complaint).

61.    For Mr. Minger, Defendants' efforts to retaliate against him did not end with his termination but extended to Defendants making demonstrably false claims about him to directly interfere with his attempt to obtain unemployment benefits, including, but not limited to, knowingly making false claims about the reasons for his

termination. This wrongful conduct exasperated the financial and emotional harm inflicted on Mr. Minger by causing him to be denied benefits until no merit was found to Defendants' claims on appeal.

62. Defendants' continued retaliation against Mr. Minger caused him additional and unnecessary mental and emotional distress that extended well past his termination. Likewise, Mrs. Czartoszewski and Ms. Paul experienced pervasive mental and emotional distress as a result of Defendants' grossly unlawful, severe and pervasive conduct. Indeed, Plaintiffs have all had to seek mental health treatment and medication as a direct result of their unlawful terminations.

63. The facts plainly demonstrate that Plaintiffs' terminations were the culmination of discrimination on the basis of their race and retaliation for engaging in protected conduct.

64. Defendants negligently tasked Gowen – a security officer with no human resources experience who was known for regularly subjecting SMHA employees to retaliation and discrimination – to conduct and oversee a very serious workplace investigation into complaints alleging violations of SMHA anti-discrimination policies.

65. Defendants were well-aware of Gowen and Keim's propensity to subject SMHA employees to discrimination, harassment, and retaliation, but allowed them to lead investigations that resulted in even more violations of state and federal law.

66. Defendants failed to properly train and ensure employee compliance with state and federal anti-harassment, discrimination and retaliation laws, which directly caused the resulting harm Plaintiffs experienced during their employment.

67. Defendants failed to take any action to protect Plaintiffs from harassment, discrimination, and retaliation and, instead, ratified their unlawful treatment and ignored their protected complaints.

68. Defendants have engaged in a pattern of conduct that has created, aided and abetted a hostile work environment where discrimination, harassment and retaliation led to the unlawful termination of Plaintiffs.

69. Defendants engaged in this wrongful conduct with the intention of inflicting severe emotional distress upon Plaintiffs by blatantly subjecting them to a level of discrimination, retaliation and a hostile work environment that no reasonable person should be expected to endure.

## COUNT I: DISCRIMINATION, RETALIATION AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C. §1983
### (Against all Defendants)

70. Plaintiffs incorporate by reference all the allegations contained in the preceding paragraphs of the Complaint.

71. Plaintiffs are Caucasian and, under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, members of a statutorily protected class.

72. Plaintiffs engaged in activity protected by the First Amendment of the United States Constitution when they provided honest and truthful statements during a workplace investigation into the allegedly discriminatory conduct of another employee and reported their unlawful treatment during those investigations.

73.     Plaintiffs were entitled to due process under the Fifth and Fourteenth Amendments of the United States Constitution before Defendants could terminate their employment. *See Cleveland Bd. Of Ed. V. Loudermill,* 470 U.S. 532 (1985).

74.     Defendants violated Plaintiffs' rights by discriminating, retaliating and perpetuating a hostile work environment against them in violation of §1983.

75.     Plaintiffs acted in good faith when they participated in the workplace discrimination investigation Defendants conducted in Spring/Summer 2023 and when they reported Gowen's hostile, discriminatory, and retaliatory actions.

76.     In response, Defendants – who are state actors – intentionally violated the rights of Plaintiffs with discrete acts of discrimination and with conduct creating and perpetuating a hostile work environment, including, but not limited to, repeatedly subjecting Plaintiffs to adverse employment actions such as unwavering intimidation, forcing them to submit to an NDA, terminating Plaintiffs for participating in a protected workplace investigation in good faith, submitting complaints of retaliation and making false statements about Plaintiffs after they were terminated.

77.     Upon information and belief, Plaintiffs never would have been subjected to such adverse employment actions if they were African American.

78.     Defendants were well-aware of the severe and pervasive race discrimination, harassment and retaliation Plaintiffs were experiencing and they perpetuated the unlawful treatment, failed to properly train employees to comply with anti-harassment, discrimination, and retaliation laws, ratified unlawful treatment and

failed to take any corrective action, including, but not limited to, investigating their complaints.

79.     Instead, Defendants escalated the harassment, discrimination, and retaliation of Plaintiffs by failing to investigate their claims of retaliation and, instead, unlawfully terminated them for providing truthful responses in a protected workplace investigation and submitting complaints for retaliation.

80.     Defendants' actions were such that any reasonable person would be deterred from engaging in the same protected speech and conduct as Plaintiffs.

81.     Defendants' failure to comply with their duty to ensure that the workplace is free of race discrimination, harassment and retaliation caused Plaintiffs to suffer adverse employment actions.

82.     Defendants' proffered reasons for terminating Plaintiffs were a pretext for discrimination and retaliation.

83.     By the conduct described above, Defendants deprived Plaintiffs of the same Constitutional rights as are enjoyed by similarly situated African American employees and employees who did not engage in protected conduct.  Indeed, the facts demonstrate that SMHA is the type of employer who discriminates against Caucasian employees in a manner it would not discriminate against African American employees.

84.     As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

## COUNT II:  DISCRIMINATION, RETALIATION AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000e
### (Against SMHA)

85.    Plaintiffs incorporate by reference all the allegations contained in the preceding paragraphs of the Complaint.

86.    Plaintiffs are Caucasian  and, under 42 U.S.C §2000e, members of a statutorily protected class.

87.    Plaintiffs were qualified for their positions and fully competent to perform their essential job duties.

88.    Plaintiffs engaged in activity protected by 42 U.S.C. §2000e when they provided honest and truthful statements during a workplace investigation into the allegedly discriminatory conduct of another employee and reported their unlawful treatment during those investigations.

89.    Plaintiffs were subjected to severe, pervasive and unwelcome race discrimination, harassment and retaliation that altered and adversely impacted the terms and conditions of their employment because of their race and because of their engagement in protected activity.

90.    Indeed, Defendants unlawfully subjected Plaintiffs to severe and pervasive harassment, discrimination and retaliation for not agreeing that Mr. Valasek's comments were racist towards African Americans during a workplace investigation into his conduct and for filing complaints for harassment, discrimination and retaliation against Gowen. Defendants did so by attempting to intimidate them into changing their truthful

protected statements, abusing them during this process, threatening them with termination for protecting their rights, subjecting them to a forced, unlawful non-disclosure agreements, terminating Plaintiffs for participating in a protected workplace investigation in good faith and submitting complaints of retaliation, and making false statements about Plaintiffs after they were terminated, among more.

91. Defendants were well-aware of the severe and pervasive race discrimination, harassment and retaliation Plaintiffs were experiencing and they perpetuated the unlawful treatment, failed to properly train employees to comply with anti-harassment, discrimination and retaliation laws, ratified unlawful treatment and failed to take any corrective action, including, but not limited to, investigating their complaints.

92. Defendants subjected Plaintiffs to discrimination and a hostile work environment, including subjecting them to different terms and conditions of employment than their African American counterparts, treating them less favorably than their African American counterparts and ultimately terminating their employment because of their race.

93. Defendants also subjected Plaintiffs to retaliation and a hostile work environment by subjecting them to criminal-like interrogations, ignoring their protected complaints and terminating them as a direct result of Plaintiffs' engagement in protected activity.

94. Defendants' proffered reason for terminating Plaintiffs is a pretext for race discrimination and retaliation.

95.     By the conduct described above, Defendants deprived Plaintiffs of their rights to maintain all benefits and privileges of their employment relationship with Defendants, which constitute contractual relationships pursuant to 42 USCS §2000e.

96.     The facts demonstrate that SMHA is the type of employer who discriminates against Caucasian employees.

97.     As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

98.     Plaintiffs received their right to sue letters from the Equal Employment Opportunity Commission and the Ohio Civil Rights Commission on March 9, 2023. Accordingly, Plaintiffs have met all procedural requirements for bringing these claims.

## COUNT III:  DISCRIMINATION, RETALIATION AND HOSTILE WORK ENVIRONMENT IN VIOLATION OF O.R.C.  §4112.01 (Against SMHA)

99.     At all times material herein, Plaintiffs qualified as "employees" of SMHA under R.C. §4112.01(A).

100.    At all times relevant herein, Defendant qualified as "employer" under R.C. §4112.01(A).

101.    Plaintiffs are Caucasian and, under R.C. §4112.02(A), members of a statutorily protected class.

102.    Plaintiffs were qualified for their positions and fully competent to perform their essential job duties.

103.    Plaintiffs engaged in protected activity when they provided honest and truthful statements during a workplace investigation into the allegedly discriminatory conduct of another employee and reported their unlawful treatment during those investigations.

104.    Plaintiffs were subjected to severe, pervasive and unwelcome race discrimination, harassment and retaliation that altered and adversely impacted the terms and conditions of their employment because of their race and because of their engagement in protected activity.

105.    Indeed, Defendants unlawfully subjected Plaintiffs to severe and pervasive harassment, discrimination and retaliation for not agreeing that Mr. Valasek's comments were racist against African Americans during a workplace investigation into his conduct and for filing complaints for harassment, discrimination and retaliation against Gowen. Defendants did so by attempting to intimidate them into changing their truthful protected statements, abusing them during this process, threatening them with termination for protecting their rights, subjecting them to a forced, unlawful non-disclosure agreements, terminating Plaintiffs for participating in a protected workplace investigation in good faith and submitting complaints of retaliation, and making false statements about Plaintiffs after they were terminated, among more.

106.    Defendants were well-aware of the severe and pervasive race discrimination, harassment and retaliation Plaintiffs were experiencing and they perpetuated the unlawful treatment, failed to properly train employees to comply with anti-harassment, discrimination and retaliation laws, ratified unlawful treatment and

failed to take any corrective action, including, but not limited to, investigating their complaints.

107. Defendants subjected Plaintiffs to discrimination and a hostile work environment, including subjecting them to different terms and conditions of employment than their African American counterparts, treating them less favorably than their African American counterparts and ultimately terminating their employment because of their race. Indeed, the facts demonstrate that SMHA is the type of employer who discriminates against Caucasian employees.

108. Defendants also subjected Plaintiffs to retaliation and a hostile work environment by subjecting them to severe and pervasive hostility, criminal-like interrogations, ignoring their protected complaints and terminating them as a direct result of Plaintiffs' engagement in protected activity.

109. Defendants' proffered reason for terminating Plaintiffs is a pretext for race discrimination and retaliation.

110. By the conduct described above, Defendants deprived Plaintiffs of their rights to maintain all benefits and privileges of their employment relationship with Defendants, which constitute contractual relationships.

111. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

112.    Plaintiffs received their right to sue letters from the Equal Employment Opportunity Commission and the Ohio Civil Rights Commission on March 9, 2023. Accordingly, Plaintiffs have met all procedural requirements for bringing these claims.

<u>COUNT IV:  AIDING AND ABETTING DISCRIMINATION</u>
<u>(Against Keim and Gowen)</u>

113.    Plaintiffs incorporate by reference all the allegations contained in the preceding paragraphs of the Complaint.

114.    At all times material herein, Plaintiffs qualified as "employees" of Defendants under R.C. §4112.02(A).

115.    At all times relevant herein, Defendants, including the individual defendants, qualified as "employers" under R.C. §4112.02(A).

116.    Plaintiffs are Caucasian and, under R.C. §4112.02(A), members of a statutorily protected class.

117.    Plaintiffs were qualified for their positions and fully competent to perform their essential job duties.

118.    Defendants terminated Plaintiffs because they were Caucasians who did not agree with Defendants' position that Mr. Valasek's comments were racist against African Americans.

119.    Upon information and belief, Defendants would not have treated African American employees with the same hostility, malice, discrimination, harassment and retaliation if they, like Plaintiffs, did not perceive Mr. Valasek's comments as racist towards African Americans.  Upon further information and belief, Defendants obtained

similar statements from African American employees about the racially offensiveness of certain statements but did not subject those employees to adverse employment actions.

Indeed, the facts demonstrate that SMHA is the type of employer who discriminates against Caucasian employees.

120.    Defendants' proffered reason for terminating Plaintiffs is a pretext for race discrimination.

121.    Keim and Gowen aided and abetted discriminatory conduct when they personally subjected Plaintiffs to unlawful hostility and intimidation, filed complaints against them for protecting their rights, forced them to sign an unlawful NDA, persuading Defendants to terminate them, refusing to take action to ensure that the workplace is free of discrimination and harassment and working in concert to discriminate against and harass Plaintiffs in violation of federal and state anti-discrimination laws.

122.    Keim and Gowen violated R.C. §4112.02(J) by aiding and abetting the discrimination of Plaintiffs because of their race.

123.    As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer severe economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

## COUNT V:   INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against all Defendants)

124.    Plaintiffs incorporate by reference all the allegations contained in the preceding paragraphs of the Complaint.

125.    Defendants intentionally and/or with reckless disregard inflicted severe emotional distress on Plaintiffs.

126.    Defendants' conduct was extreme and outrageous because they intentionally subjected Plaintiffs to severe and pervasive race discrimination, harassment and retaliation by terminating them for their honest beliefs about the conduct of another employee that had nothing to do with the conduct of any Plaintiff, ignoring Plaintiffs' protected complaints, forcing Plaintiffs to be re-interrogated by the very person they filed complaints against, refusing to identify and remedy obvious Civil Rights violations, terminating them for engaging in protected activity and making false statements about them after they were terminated, among more.

127.    Defendants' intentional conduct has severely damaged Plaintiffs' reputations, which adversely affected their ability to find subsequent employment.

128.    As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer severe emotional, economic and non-economic damages, all or a portion of which are likely to continue indefinitely into the future.

### COUNT VI:  NEGLIGENT RETENTION, TRAINING & SUPERVISION
### (Against SMHA)

129.    Plaintiffs incorporate by reference all the allegations contained in the preceding paragraphs of the Complaint.

130.    Defendants had a duty to train employees to comply with Federal and State anti-discrimination and anti-retaliation laws to prevent employees from being subjected to discrimination, harassment and retaliation, among other things.

131. Defendants had a duty to ensure that the workplace was free of race discrimination, harassment and retaliation.

132. Defendants had a duty to only retain employees who comply with Federal and State anti-discrimination laws to prevent employees from being subjected to discrimination, harassment and/or retaliation, among other things.

133. Defendants had a duty to train and supervise employees to comply with Federal and State anti-discrimination laws to prevent employees from being subjected to discrimination, harassment and/or retaliation, among other things.

134. Defendants wrongfully breached their duty to train and supervise employees to ensure they comply with Federal and State anti-discrimination laws and their duty to only retain employees who comply with those same laws by continuing to employ individuals who consistently violated anti-discrimination laws, including Gowen and Keim.

135. Defendants were well-aware of Gowen and Keim's propensity to intentionally and maliciously violate federal and state anti-discrimination and anti-retaliation laws. Both Gowen and Keim have been regular subjects of workplace complaints similar to those lodged by Plaintiffs and Defendants repeatedly ratified their conduct and continued to employ them without any repercussions in spite of their undeniably unlawful workplace conduct.

136. As a direct and proximate cause of Defendants' wrongful conduct, Plaintiffs have suffered and will continue to suffer foreseeable and severe economic and non-

economic damages, all or a portion of which are likely to continue indefinitely into the future.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

    i.   Requiring Defendants to abolish discrimination, harassment and retaliation in the workplace.

    ii.  Requiring allocation of significant funding and trained staff to implement all changes within two years.

    iii. Requiring removal or demotion of all employees who have engaged in discrimination, harassment or retaliation, failed to meet their legal responsibility to promptly investigate complaints and/or take effective action to stop and deter unlawful conduct against employees.

    iv. Creating a process for the prompt investigation of discrimination, harassment and/or retaliation complaints.

    v.  Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment and retaliation issues, investigations, and appropriate corrective actions.

    vi. Requiring Defendants to expunge Plaintiffs' personnel files of all negative documentation.

     vii.    Requiring Defendants to cease and desist from any employment practice which discriminates against Plaintiffs or others on the basis of race, color, national origin, religion, sex, military status, disability, age, or ancestry, or in retaliation against the person because he or she complained about such discrimination;

(b) For an award against Defendants of compensatory and monetary damages to compensate Plaintiff for emotional distress, personal injury, property damage, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) For an award of punitive damages against any individual Defendant to the extent allowable by law in an amount in excess of $25,000;

(d) For an award of reasonable attorney's fees and non-taxable costs for Plaintiffs' claims as allowable under law;

(e) For an award of the taxable costs of this action; and

(f) For an award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Ashley M. Fuchs*
Bradley A. Sherman (0063906)
F. Allen Boseman, Jr. (0084103)
Ashley M. Fuchs (0097943)
SHERMAN BOSEMAN LEGAL GROUP, LLC
800 West St. Clair Avenue, 4th Floor
Cleveland, OH  44113
Telephone:  216.239.1414
Facsimile:   216.239.1316
Email:  bradley@shermanboseman.com
            allen@shermanboseman.com

ashley@shermanboseman.com

Attorneys for Plaintiff
KATHERINE CZARTOSZEWSKI

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Katherine Czartoszewski demands a trial by jury on all issues so triable and by the maximum number of jurors permitted.

*/s/ Ashley M. Fuchs*
Ashley M. Fuchs

One of the Attorneys for Plaintiff
KATHERINE CZARTOSZEWSKI